UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case #04-30170-MAP

| | |
|---|---|
| WESTFIELD EAST MAIN )<br>STREET LLC, Plaintiff )<br>)<br>v. )<br>)<br>)<br>C. DAVID TRADER, )<br>JEAN M. TRADER, )<br>JOSEPH B. MITCHELL, )<br>TERESA K. MITCHELL, )<br>DONALD GOVE, )<br>MARK D. SIEBERT, )<br>BRIAN BURKE, )<br>MICHAEL BRETON, )<br>BRADFORD MOIR, )<br>MARY MOIR, )<br>INTERSTATE BUILDING )<br>SUPPLY, INC., and )<br>LUMBER CENTER, INC., )<br>Defendants ) | SPECIAL MOTION TO DISMISS<br>PURSUANT TO MASSACHUSETTS<br>GENERAL LAWS c. 231, §59H<br>IN BEHALF OF THE DEFENDANTS<br>C. DAVID TRADER, JEAN M. TRADER,<br>DONALD GOVE, MICHAEL BRETON,<br>BRADFORD MOIR AND MARY MOIR<br>AND MEMORANDUM IN SUPPORT<br>THEREOF |

Now come the Defendants, C. David Trader, Jean M. Trader, Donald Gove, Michael Breton, Bradford Moir and Mary Moir, and move this Court, pursuant to the provisions of Massachusetts General Laws c. 231, §59H, to dismiss the Plaintiff's Complaint in its entirety.

The above named Defendants further move this Court to award them costs and reasonable attorneys fees as required pursuant to paragraph 5 of M.G.L. C. 231,§59H, in an amount which in this Court's determination is fair and just.

In support of their special motion, the Defendants submit the following Memorandum made a part hereof.

**Factual and Procedural Background**

On or about February 15, 2003, Konover Development Corp. (hereinafter referred to as "Konover") filed a Notice of Intent with the Westfield Conservation Commission relative to the acquisition of a wetlands Order of Conditions for the demolition of the existing Caldor store (approximately 73,000 square feet) at 514 East Main Street (hereinafter referred to as the "property") and the construction of a new facility (approximately 96,000 square feet) on the property. The Plaintiff acquired title to the property on February 2, 2001 by deed of R.I. Waterman Properties, Inc. (see Exhibit "A" attached hereto) The Plaintiff was never a party to any of the Administrative proceedings before DEP, or a party in any capacity before the Massachusetts Superior Court in the subsequent administrative appeal. Other than being named as the "Owner" in the Notice of Intent filed by Konover with the WCC, the Plaintiff was not present or represented by Counsel in the underlying proceedings.

On March 25, 2003, the Westfield Conservation Commission conducted a public hearing on the Konover application. At approximately 10:00 p.m. the public hearing was closed. The Westfield Conservation Commission issued an Order of Conditions to Konover which bore the date of March 25, 2003. The Order of Conditions dated March 25, 2003 did not address the issue of compensatory flood storage for the approximately 73,000 square feet of the area of the existing building which was to be demolished. The Petitioners had previously obtained information from an Environmental Consultant regarding this project tand the compensatory flood issue (see Exhibit B)

On or about March 31, 2003, the Westfield Conservation Commission issued a "Corrected Order of Conditions" which included additional information not attached to the initial Order of Conditions and dealt, with some particularity, with the issues of compensatory flood storage. The addition of the engineer's report and additional plans and surveys was more than a "correction of a typographical error" allowed by applicable administrative rule. The "Corrected Order of Conditions" bears the self-serving statement that it "does not affect" the original order. However, the Defendants contended

that once additional materials, not available at the public hearing (the engineer's report and plans were not received at DEP until after the public hearing was closed), and had a direct impact upon the nature of the Order of Conditions.

Under applicable administrative rules (see **31 C.M.R. 10.04** and **801C.M.R.1.01(4)(b)** and **DWW Policy 85-4, as revised March 1, 1995**), there is no clear date as to when the Order of Conditions was actually issued. The Westfield Conservation Commission (hereinafter and above referred to as "WCC") used a postage meter for its mailings. The envelope bearing the U.S. Postal Service date stamp has been lost. The records at DEP indicate no clear date of receipt of either the initial Order of Conditions or the Corrected Order of Conditions (hereinafter referred to as "SOC"). As a result, the Defendants raised the issue that, absent an evidentiary hearing to determine the "date of issuance", no inference or presumption in favor of March 26, 2003 was possible. The initial request for an SOC was signed by more than thirty-five (35) residents of the City of Westfield.

The request for an SOC was mailed to DEP on April 10, 2003 (copy of Express Mail receipt attached as Exhibit C) and a copy hand delivered to the DEP Western regional Office on April 11, 2003. All of the Petitioners printed names and their addresses were contained in the request.

On April 14, 2003, Counsel for Konover sent an *ex parte* communication to the fact finder (DEP) stating categorically that the Defendants' filing was late because the date of issuance was March 26, 2003. (a copy of that communication is attached as Exhibit D) The communication was received by Defendants' Counsel at approximately 5:12 p.m. (see facsimile transmittal date on Exhibit C), after the close of business at DEP.

Less than twenty-four (24) hours following the *ex parte* communication from Konover's Counsel, DEP issued a letter of denial of the Defendants' request for an SOC. The letter is attached as Exhibit E, and refers to March 26, 2003 as the date of issuance but makes no reference to the *ex parte* communication by Konover's Counsel nor does it

refer to the factual basis upon which that determination was reached. If the file was the subject of a "careful review" as stated therein, it would have disclosed that there was no envelope from the WCC, no return receipt from DEP by way of the WCC, or any indication in the file of a March 26, 2003 (or any other date for that matter) DEP receipt stamp. Absent that specific information, it is incredulous that the conclusion of a March 26, 2003 date of issuance was reached (especially with no evidence offered to support that fact and in view of the multiple Orders of Conditions and lack of DEP or WCC information to verify the actual date) by the DEP Western Regional Office.

On April 28, 2003, ten (10) of the original Petitioners, acting through Counsel, requested an Adjudicatory Hearing (copy attached as Exhibit F). The request made it clear that the substantive issue being raised was the WCC's and DEP's failure to fully and adequately address the compensatory flood storage issues. The procedural issue raised in this request dealt with the failure of the DEP to conduct any fact finding into the actual "date of issuance" and its reliance upon the *ex parte* conclusion from Konover's Counsel that March 26, 2003 was the "date of issuance". The Petitioners suggested that absent an evidentiary hearing, no such conclusion could be reached in light of the multiple factual deficiencies in the determination of the "date of issuance".

Between April 28, 2003 and June 22, 2003, Konover filed a Motion to Dismiss the Petitioners' Request for an Adjudicatory Hearing. The Petitioners did not specifically file an opposition, but rather filed a Motion to Strike the Konover motion, and further filed a Motion for Limited Discovery, seeking to obtain discovery of the WCC's mailing practices and file information relative to mailings to DEP, and the DEP procedures for "stamping in" documents which do not meet regulations for mailing. The Petitioners also filed a Motion seeking an Order Compelling the City of Westfield and DEP from engaging in *ex parte* communications and scheduling of any hearings without notice to the Petitioners or their Counsel.

On June 23, 2003, the Administrative law Judge (hereinafter referred to as the "ALJ") issued a Recommended Final Decision. That decision essentially denied the

Petitioners' Request for an Adjudicatory Hearing on the grounds that the request for an SOC was "untimely". The ALJ never conducted any evidentiary hearing on the issue of the actual "date of issuance" and adopted, without any evidentiary basis, the DEP's position of March 26, 2003, despite the Petitioners' continued objection that there were far too many inconsistencies and deviations from applicable provisions of the CMR to reach that conclusion. The ALJ's recommendation was adopted by the Commissioner on August 8, 2003.

On or about August 18, 2003, the Petitioners, through Counsel, filed a Motion for Reconsideration with the ALJ. The Petitioners further sought to have the ALJ conduct a limited evidentiary hearing on what they asserted was a "dispositive issue". The Petitioners argued that, *inter alia*, the WCC and DEP files had no documentation to support a March 26, 2003 "date of issuance" and again stated that an evidentiary hearing on that issue would be dispositive of that procedural matter. The ALJ issued a Recommended Decision on October 1, 2003 denying the Petitioners' Motion for Reconsideration. The Commissioner adopted the ALJ's decision on October 7, 2003.

On November 5, 2003, the Petitioners, through Counsel, filed an action with the Hampden County Superior Court pursuant to M.G.L. c. 30A, seeking a review of the administrative decisions in the DEP process. The essential assertion of the Plaintiffs in that action was that the initial decision by the DEP, Western Regional Office was tainted by the *ex parte* communication from Konover's Counsel, and further that the adoption of the March 26, 2003 "date of issuance" of the WCC's Order of Conditions was plainly wrong.

In addition, the Plaintiff prayed for leave to engage in the same limited discovery to establish the lack of evidence to support the DEP's and the ALJ's decisions. The Plaintiffs contended that this limited discovery would allow for a dispositive treatment of the "date of issuance" controversy, arguing that there were far too many discrepancies between applicable regulations and factual questions underlying the initial conclusion. The Plaintiffs thereafter, within the time allowed by Rule of Court, filed a separate

motion for that purpose (copy attached as Exhibit G). This motion was summarily denied without comment (see Exhibit H), and Counsel was not notified until the Court advised of that action during the course of an oral argument on March 10, 2004 (the Clerk's office, being understaffed, did not send notice between February 27, 2004 and March 10, 2004).

Thereafter Plaintiffs filed a Motion for Reconsideration, arguing, in a manner similar to summary judgment, that the "fact" asserted by the DEP, the ALJ and the Commissioner was not supported by any evidence, and thus the DEP did not bear their burden of proof to conclusively establish the "date of issuance", and that the limited discovery and an evidentiary hearing would be dispositive of that issue and even the Plaintiffs' case (see Exhibit I). The Plaintiffs' motion was again summarily denied without comment by the Court (Exhibit J).

On May 21, 2004, the Court issued its Memorandum and Decision, denying the Plaintiffs' petition (Exhibit K). **In the Court's decision, the Judge stated that the ALJ had stated that "the parties did not argue that the Order was not issued on March 26, 2003". That statement is plainly wrong. In light of the multiple attempts to have that issue resolved by way of discovery and an evidentiary hearing, there was certainly no lack of disagreement between the parties regarding the "date of issuance".**

In addition, the Court stated that the ALJ properly applied DEP policies. **To reach that conclusion was plainly wrong. The complete avoidance and disregard for the applicable provisions of 310 C.M.R. 10.04 in conjunction with 801 C.M.R. 1.01(4)(b) clearly form the basis for a determination that the ALJ's application of the regulations was error.**

Finally, the Court stated that the Plaintiffs bore the burden of showing that the Commissioner's decision was unsupported by substantial evidence or was arbitrary or capricious. **The Court ruled that the Plaintiff had not met that burden. Despite**

**requests for dispositive discovery, the Court denied those requests and then concluded that the Plaintiffs did not meet their burden of proof. This series of rulings is inconsistent and plainly wrong. When a party seeks to discover information that is dispositive of an issue and is denied that opportunity, not once but on three separate occasions, it is wrong to then conclude that they have not met a proof burden when they have been denied that very proof.**

Final Judgment entered on June 21, 2004 (Exhibit L). That decision was the subject of a Notice of Appeal filed on July 9, 2004 (Exhibit M).

The above captioned action was commenced on September 1, 2004 and served on or about September 3, 2004 upon the Defendants.

## Legal Argument

The Plaintiff in this action, seeks to hold the Defendants, and in particular the individual Defendants named herein, liable for intentional interference with contractual relationships and intentional interference with advantageous business relationships. In essence, the Complaint (unverified) suggests that there is a "suspicion" of some conduct on the part of the individuals that rises to overt and intentional torts.

After a recitation of the process before the WCC, the DEP and the Hampden Superior Court, the Plaintiff sets forth a series of statements that it asserts is based upon "information and belief", but make no direct statements of fact, and simply imply or raise conjecture as to the fact asserted. In addition, there are several misstatements imbedded within the allegations which are simply untrue. For example, the Plaintiff states (¶ 18) that one of the original ten residents was "misled" into joining in the petition to DEP. On the contrary, the individual was intimidated by his mother, a close acquaintance of the Mayor of Westfield, and with whom he lived, to remove his name from the proceedings. The Plaintiff also states that "each of the Petitioners is in some manner connected to

**requests for dispositive discovery, the Court denied those requests and then concluded that the Plaintiffs did not meet their burden of proof. This series of rulings is inconsistent and plainly wrong. When a party seeks to discover information that is dispositive of an issue and is denied that opportunity, not once but on three separate occasions, it is wrong to then conclude that they have not met a proof burden when they have been denied that very proof.**

Final Judgment entered on June 21, 2004 (Exhibit L). That decision was the subject of a Notice of Appeal filed on July 9, 2004 (Exhibit M).

The above captioned action was commenced on September 1, 2004 and served on or about September 3, 2004 upon the Defendants.

**Legal Argument**

The Plaintiff in this action, seeks to hold the Defendants, and in particular the individual Defendants named herein, liable for intentional interference with contractual relationships and intentional interference with advantageous business relationships. In essence, the Complaint (unverified) suggests that there is a "suspicion" of some conduct on the part of the individuals that rises to overt and intentional torts.

After a recitation of the process before the WCC, the DEP and the Hampden Superior Court, the Plaintiff sets forth a series of statements that it asserts is based upon "information and belief", but make no direct statements of fact, and simply imply or raise conjecture as to the fact asserted. In addition, there are several misstatements imbedded within the allegations which are simply untrue. For example, the Plaintiff states (¶ 18) that one of the original ten residents was "misled" into joining in the petition to DEP. On the contrary, the individual was intimidated by his mother, a close acquaintance of the Mayor of Westfield, and with whom he lived, to remove his name from the proceedings. The Plaintiff also states that "each of the Petitioners is in some manner connected to

Lumber Center and/or Interstate" (¶ 19). This is not true (see affidavit of Mary Moir attached hereto in support hereof). Further, the Plaintiff states that at the hearing on March 10, 2004 before the Superior Court, the "Petitioners essentially conceded that if the Court denied their Discovery Motion, the agency decision would have to be affirmed." (¶ 27). This is not true. Counsel argued that the Court needed the information sought to properly and fairly weigh the ALJ's decision in light of actual evidence that was never permitted in the administrative proceedings.

The Plaintiff continues to state its case in speculative and conclusory statements, assuming to know the motives of the various petitioners (¶¶ 34, 35 and 36) without stating any acts specifically to support their legal conclusions. The Defendants' appeal is based upon genuinely justiciable issues and cannot be deemed frivolous simply because the Defendants have not had success before the two tribunals from whom they sought review of the procedural and substantive issues they originally presented. Certainly the process as outlined above indicates genuine issues were raised throughout the proceedings. Simply because the issues have not been addressed is not a limitation on the Defendants' right to petition a reviewing authority in good faith. The Defendants contend that the Superior Court and Administrative Law Judge erred in their adoption of March 26, 2003 as the "date of issuance" of the WCC's Order of Conditions.

In addition, the Plaintiff states that the Defendants knew of the contract between the Plaintiff and Home Depot (¶¶ 32, 33 and 40). This is simply not true. The Plaintiff was never a participant in the WCC proceedings, the subsequent DEP process and the Superior Court action, nor was the Plaintiff ever identified (other than as "Owner" on the Konover Notice of Intent filed with the WCC) or declared as having any relationship with Home Depot in connection with the proceedings leading up to the Notice of Appeal.

Any advantageous business relationship that the Plaintiff has or may have had with Home Depot was never disclosed to the Defendants at any time. In fact, even Home Depot, as an Intervenor never made it apparent that they were in any contractual or advantageous relationship with this Plaintiff. To now charge the Defendants with that

knowledge is patently improper and purely speculative absent any specific factual allegations.

The Plaintiff's claims of intentional interference with contractual relations and intentional interference with advantageous relations are based exclusively upon the Defendants' right of petition under the United States Constitution and the Massachusetts Declaration of Rights. The provisions of Massachusetts General Laws, Chapter 231, §59H provide in part:

> "In any case in which a party asserts that the civil claims . . . are based on said party's exercise of its right to petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. The Court shall advance any such motion so that it may be heard and determined as expeditiously as possible. The Court **shall** grant such motion, **unless the party against whom such special motion is made shows that**: (1) the moving party's exercise of its right to petition was **devoid of any reasonable factual support or any arguable basis in law, and** (2) the moving party's acts caused actual injury to the responding party" **M.G.L. c.231,§59H** (emphasis added)

This action is framed in the classic nature of a Strategic Lawsuit Against Public Participation (hereinafter referred to as "SLAPP") to which the Massachusetts Legislature addressed the provisions of M.G.L. c. 231,§59H. The Plaintiff's Complaint is an action directed at citizens of modest means for speaking publicly against a development project. The Massachusetts courts have clearly defined the parameters of this activity as prohibited, even if the challenged activity is not motivated by matters of public concern. See **Office One, Inc. v. Lopez**, 437 Mass. 113, 769 NE2d 749 (2002) citing **Duracraft Corp. v. Holmes Products Corp.** 427 Mass. 156, 691 NE2d 935 (1998) In this case, there are no allegations of fact which can be construed to include any activity other than the exercise of the right to petition. Essentially, the Plaintiff is asserting that the mere acquaintance among the Defendants overrides their right to petition.

The Plaintiff clearly states that the motivation of the Defendants was based solely on economic considerations (Complaint ¶ 36). There are no allegations of a factual nature to support this conclusion. Regardless, the motive of the Defendants is irrelevant under the statute. **Fabre v. Walton, 436 Mass. 517, 781 NE2d 780 (2002)**

The Defendants have demonstrated, through their pleadings and affidavit attached hereto, that there are genuine issues being appealed and that their activities are not devoid of any reasonable factual support or arguable basis in law. In fact the Massachusetts courts have made it clear that it is not enough for the party, against whom relief under this motion is sought, to show that the petitioning activity was based upon an error of law, rather a plaintiff who alleges that the defendant's activities lacked an arguable basis in law must show that **no reasonable person could conclude that there was a basis in law for the defendants' petitioning activity** (emphasis added) See **Baker v. Parsons, 434 mass. 543, 750 NE2d 953 (2001)**

In addition to the showing that the Defendants' petitioning activities are devoid of any factual or legal support, the Plaintiff **must** show that the Defendants' activities caused actual injury to the Plaintiff. In this case, there is nothing more than a "surmise" that the Defendants' appeal, or for that matter, any prior administrative proceedings, caused any injury to this Plaintiff. The Plaintiff alleges a contract. None of the Defendants could have known about the existence of a private contract or its terms. To make that leap, the Defendants must be charged with precognition. They are not so charged by the Plaintiff's Complaint.

The Plaintiff brands the Defendants' petitioning activities as "willful", "intentional" and "malicious", but makes no factual allegations that the Defendants engaged in **any** activities other than the administrative and appellate process before the DEP and Superior Court. The Plaintiff merely suggests that "guilt by association" is the proper standard to invoke and apply. Our courts do not work on that basis. **Duracraft Corp. supra.**

The Plaintiff suggests that the Defendants' appeal is frivolous and commenced "solely to delay, frustrate and/or prevent the Home Depot development." There are no factual allegations to support this conclusion. Unless there is an allegation of fact that directly alleges activities beyond the scope of the petitioning activity, no damages can be proven. Absent any allegation of such fact, the Defendants' motion must be granted and an award of costs and reasonable attorney's fee made. **Office One, Inc. supra.**

## Conclusion

For all of the foregoing reasons, this Court should dismiss the Plaintiff's Complaint as to the named individual Defendants pursuant to M.G.L. c. 231, §59H, and award such costs and reasonable attorney's fees as it deems fair and just.

The Defendantss,
by their Attorney,

/William J. Pudlo
P.O. Box 676
West Springfield, Mass. 01090
Telephone: (413) 739-4000

## Certificate of Service

  I, William J. Pudlo, hereby certify that I have served a copy of the above pleading by mailing a copy of the same, postage prepaid, to David A. Brown, 101 Federal Street, Boston, Massachusetts 02110.

Dated: September 22, 2004

                    _____
                    William J. Pudlo

\win\word\HomeDepotfederalSpecialMotion

# Exhibit "A"

## QUITCLAIM DEED

KNOW ALL MEN BY THESE PRESENTS, that R. I. WATERMAN PROPERTIES, INC., a Delaware corporation having a principal place of business at 40 Westminster Street, Providence, Rhode Island ("Seller"), FOR CONSIDERATION PAID AND IN FULL CONSIDERATION OF **SEVEN HUNDRED FIFTY THOUSAND** and 00/100 **($750,000.00) DOLLARS**, GRANTS TO **WESTFIELD EAST MAIN STREET, LLC**, a Connecticut limited liability company having a principal place of business at 16 Munson Road, Farmington, Connecticut 06032, with **QUITCLAIM COVENANTS**,

The land in Westfield, Hampden County, Massachusetts, known and designated as 514 East Main Street, Westfield, Massachusetts, more particularly bounded and described on **Exhibit "A"** annexed hereto and made a part hereof.

IN WITNESS WHEREOF, the said R. I. WATERMAN PROPERTIES, INC. has caused its corporate seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by David A. Ault and Dana R. DiMartinis, its Vice President and Vice President, respectively, this 29th day of January, 2001.

Witness(es):  R. I. WATERMAN PROPERTIES, INC.

_____ By _____
                               Its Vice President
_____ By _____
                               Its VICE PRESIDENT

STATE OF RHODE ISLAND

Providence, RI, ss.                           January 29, 2001

Then personally appeared the above-named David A. Ault and Dana R. DiMartinis, its Vice President and Vice President, respectively, and acknowledged the foregoing instrument to be the free act and deed of R. I. WATERMAN PROPERTIES, INC., before me,

_____
Notary Public
My commission expires: 6-28-01

CONSTANCE A. TOMASETTI
NOTARY PUBLIC
MY COMMISSION EXPIRES JUNE 28, 2001

514 East Main St Westfield

having a radius of 30.00 feet for distance of 48.54 feet to a point, the last three (3) courses being along land now or formerly of East Street Mall Associates; thence westerly along a line curving to the right running along the northerly street line of East Main Street, having a radius of 2367.00 feet for a distance of 111.45 feet to the point and place of beginning.

BEING the same premises described in a Foreclosure Deed dated May 6, 1998 from Fleet Bank, N. A. n/k/a Fleet National Bank, to R. I. Waterman, Inc., recorded in the Hampden County Registry of Deeds in Book 10280, Page 163, and in a Corrective Deed from Fleet National Bank to R. I. Waterman Properties, Inc. dated January 25, 2001 and recorded immediately prior hereto.

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

EXHIBIT "A"

514 EAST MAIN STREET, WESTFIELD, MASSACHUSETTS

Certain real estate situated in the City of Westfield, Hampden County, Massachusetts, bounded and described as follows:

ALL THAT CERTAIN lot or parcel of land located in the Town of Westfield, County of Hampden and Commonwealth of Massachusetts, being the same premises shown as "Parcels 1, 2 & 3 To Be Conveyed To Westfield Associates" on a certain plan entitled, "Plan of Land In The City of Westfield, Mass. To Be Conveyed To The Westfield Associates. Durkee, White, Towne and Chapdelaine, Civil Engineers and Land Surveyors, 356 Front Street - Chicopee, Massachusetts Jan. 17, 1979, Scale 1" = 80', DWG. No. 91-5171, Sheet 21", which plan is filed in the Hampden County Registry of Deeds at Book of Plans 183, Page 113, to which reference may be had, being more particularly bounded and described as follows:

Beginning at a point on the northerly street line of East Main Street, which point marks the southwest corner of the parcel herein described and the southeast corner of land now or formerly of Stephen W. & Dorothy A. Kantany; thence N 25°41'30"E for a distance of 250.00 feet to a point; thence N 64°18'30"W for a distance of 225.00 feet to a point, the last two (2) courses being along land now or formerly of Stephen W. & Dorothy A. Kantany; thence N 25°41'30"E for a distance of 570 feet more or less along land now or formerly of Philip L. & Esther C. Kay to the southerly line of the Westfield River; thence turning and running southeasterly and easterly along the southerly line of the Westfield River for a distance of 1675.00 feet, more or less, to a point; thence running southerly along the west line of the Westfield River for a distance of 705.00 feet, more or less to a point; thence N 85°29'17"W for a distance of 110.00 feet to a point; thence along a line curving to the right with a radius of 2367.00 feet for a distance of 326.36 feet to a point, the last two (2) courses running westerly along the northerly line of East Main street; thence N 12°24'42"E for a distance of 148.51 feet to a point; thence S75°42'30"E for a distance of 204.10 feet to a point; thence N 20°00'42"E for a distance of 145.93 feet to a point, the last three (3) courses being along land now or formerly of the Mobil Oil Corp.; thence westerly along a line curving to the right with a radius of 2367.00 feet for a distance of 325.00 feet to a point; thence N 64°18'30"W for a distance of 104.80 feet to a point; thence N 64°18'30" W., 251.20 feet to the point and place of beginning, the last three (3) courses running westerly along the northerly line of East Main Street.

Excepting and excluding therefrom that portion of the above described premises conveyed to the Commonwealth of Massachusetts in a deed dated November 30, 1979 and recorded with the Hampden County Registry of Deeds in Book 4878, Page 39, and described as that certain lot or parcel of land situated on the northerly side of East Main Street, Westfield, Hampden County, Massachusetts, designated as Parcel 5 as shown on a certain plan entitled "Plan Of Land In The City of Westfield, Mass. Owned by East Street Mall Associates. Durkee, White, Towne and Chapdelaine, Civil Engineers and Land Surveyors, 356 Front Street - Chicopee, Massachusetts, May 21, 1979, Scale 1" = 80", DWG. No. 91-5171, Sheet 23", which plan is on file in the Hampden County Registry of Deeds at Book of Plans 188, Page 51, to which reference may be had, being more particulary bounded and described as follows:

Beginning at a point on the northerly street line of East Main Street, which point marks the southwest corner of the parcel herein described and the southeast corner of land shown and designated as Lot "4" on the aforesaid Map; thence N 12°24'42"E for a distance of 100.00 feet along land now or formerly of the Mobil Oil Corp. to a point; thence N 77°35"18"W for a distance of 80.00 feet to a point; thence N 12°24'42"E for a distance of 67.41 feet to a point; thence along a line curving to the left

**Exhibit "B"**

# NEW ENGLAND ENVIRONMENTAL, INC.
ENVIRONMENTAL CONSULTING SERVICES



# MEMO

TO:        Brad Moir

FAX:       (413) 562-4691

FROM:      Karro A. Frost                    15 pages

DATE:      4 April, 2003

RE:        Proposed Westfield Commercial Building at Caldor's

FILE:      NEE 03-2126
           DEP File # 333-531

★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

Hi Brad-

I am faxing you three documents that seem relevant to me.

1) A denial of the project issued on April 4, 1978 (what a coincidence!) by Angelo Iantosca of DEQE (5 pages) which states that compensatory storage for any building in the floodplain is required.

2) An Order of Conditions for the project issued on November 1, 1978 (looks like it is actually a new project and file #). This includes floodproofing the building, and having all work outside of the floodway, but allowing the building with no compensatory storage within the floodplain of the Westfield River.

3) A letter faxed to our office for another project on April 1, 2003. DEP now date-stamps all outgoing mail, and the date-stamp is not in type and did not copy so I don't have the original date of this letter. The Ware Conservation Commission felt that any fill more than 2 years old was too old for them to do anything about. DEP has taken a different stance. I did check and it appears that Neck Road lies within the same reach of the River, which I had questioned originally.

9 RESEARCH DRIVE • AMHERST, MA 01002 • PHONE: (413) 256-0202 • FAX: (413) 256-1092

# NEW ENGLAND ENVIRONMENTAL, INC.
ENVIRONMENTAL CONSULTING SERVICES



There was no previous compensatory storage for the Caldor building in 1978. It does not seem that past wrong deeds should be allowed to stand for the present work, as the public will have to pay for damage after 100 year flood events. I think that it is reasonable to request DEP to review the issue of compensatory storage. The building lies completely within the 100-year floodplain (Zone A) of the most recent FEMA Flood Insurance Maps (May 1, 1978).

Finally, I'm not sure when the Wetlands Protection Act started requiring compensatory storage for floodplain projects (I've gone back to previous introductions to the regulations, but can't find a date). Based on the correspondence that you sent me related to the original building, regulators who dealt with floodplains knew about, and recommended, compensatory storage for the original plan.

I hope this helps. The compensatory storage issue seems to be the only real issue here, and given the large volume that would need to be compensated for, it may be show-stopper, or at least slow the construction.

F:\SHARED\Employee Files\Karro\AA Letterhead NEW.doc

9 RESEARCH DRIVE • AMHERST, MA 01002 • PHONE: (413) 256-0202 • FAX: (413) 256-1092