UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WESTFIELD EAST MAIN STREET LLC,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>C. DAVID TRADER and JEAN M. TRADER,  )<br>DONALD GOVE, BRIAN BURKE,  )<br>MICHAEL BRETON, BRADFORD MOIR,  )<br>MARY MOIR, INTERSTATE BUILDING  )<br>SUPPLY, INC. and LUMBER CENTER, INC.,  )<br>)<br>Defendants.  )<br> ) | Civil Action<br>No. 04-30170-MAP |

PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO DISMISS
OF DEFENDANTS C. DAVID TRADER, JEAN M. TRADER,
DONALD GOVE, MICHAEL BRETON, BRADFORD MOIR AND MARY MOIR

Plaintiff Westfield East Main Street LLC ("Westfield") brought this action to recover damages caused by defendants' use of sham litigation to interfere with Westfield's contractual and business relationship with Home Depot USA, and to impede, delay and prevent the development of a Home Depot store in Westfield, Massachusetts. Westfield alleges that Interstate Building Supply, Inc. ("Interstate") and Lumber Center, Inc. ("Lumber Center"), for anti-competitive reasons, have funded and led friends, neighbors, and employees in a campaign to prevent Home Depot, a potential competitor, from opening its doors in Westfield.

Six individual defendants, C. David Trader, Jean M. Trader, Donald Gove, Michael Breton, Bradford Moir and Mary Moir (the "Defendants"), seek to dismiss this action by relying on the protections afforded to legitimate petitioners under the Massachusetts anti-strategic litigation against public participation ("Anti-Slapp") statute, Mass. Gen. L. c. 231, §59H. Their motion should be denied. The Anti-Slapp statute does not shield these Defendants from their

conduct for two reasons. First, the Anti-Slapp statute is a state *procedural* law that does not apply in federal court. Second, even if Court were to apply the Anti-Slapp statute, the statute protects only legitimate petitioning activity; it does not protect petitioning activity that is devoid of any reasonable factual support or any arguable basis in law. The Defendants' petitioning activity is a sham engaged in for anti-competitive purposes, which is not protected by the Anti-Slapp statute. Accordingly, the Court should deny the Special Motion to Dismiss.

## FACTS ALLEGED IN COMPLAINT

### A.   Prior Proceedings

On or about February 15, 2003, Konover Development Corporation ("Konover"), acting as an agent on behalf of Westfield LLC, filed a Notice of Intent with the Westfield Conservation Commission (the "Commission"), seeking a wetlands permit under Mass. Gen. L. c. 131, §40 for its proposed redevelopment of property at 514 East Main Street, Westfield (the "Proposed Development"). See Complaint, ¶16. The Commission conducted a public hearing on the Notice of Intent on March 25, 2003 and, that night, issued an Order of Conditions for the Proposed Development. Id., ¶17. The Commission sent an Order of Condition to the applicant by certified mail on March 26, 2003. Id. On March 30, 2003, the Commission issued a Corrected Order of Conditions that made two clerical corrections. Id. On the transmittal letter issued with the Corrected Order of Conditions, the Commission expressly stated that the corrections "Do Not Effect the conditions ordered by the Westfield Conservation Commission nor the issuance date of 3/25/03 as they address clerical matters only." Id.

On April 11, 2003, a petition was hand-delivered to the Department of Environmental Protection Western Regional Office (the "DEP"), purportedly on behalf of at least ten residents of the Town of Westfield, requesting that the DEP issue a Superseding Order of Conditions

denying the project for failure to provide sufficient compensatory flood storage. See Complaint, ¶18. At least one of the original ten petitioners (the "Petitioners") was misled into joining the petition and withdrew. Petitioners substituted another petitioner. See id. On April 15, 2003, the DEP denied the request of the Petitioners as untimely under 310 CMR 10.05(7), which requires the filing of a request within ten (10) days after the date of issuance of the Order of Conditions. See id., ¶19.

On April 28, 2003, the Petitioners appealed the DEP's decision to its Office of Administrative Appeals (the "DEP Appeal"). See Complaint, ¶20. On August 8, 2003, the Commissioner of the DEP dismissed the appeal for lack of jurisdiction based on the untimeliness of Petitioners' request, and denied the Petitioners' Motion for Reconsideration of that decision on October 7, 2003. See id., ¶¶17-18 (sic).[1] Each of the Petitioners is either an employee, long-standing customer, friend of the owner, or member of the board of directors of Interstate and/or Lumber Center. See id., ¶19 (sic). Petitioner Mary Moir is the wife of Interstate's director and officer, petitioner Bradford Moir.[2] Interstate and/or Lumber Center funded the Petitioners' DEP Appeal. See id., ¶20 (sic).

The Petitioners filed a complaint pursuant to Massachusetts General Laws c. 30A on November 5, 2003, seeking administrative review of the DEP's decision denying their request for a Superseding Order based on the untimeliness of the request (the "Administrative Review"). See Complaint, ¶21. The Court permitted Konover and Home Depot to intervene as party-defendants in that action pursuant to G.L. c. 30A, §14(2) and Mass. R. Civ. P. 24(a). See

---

[1] The Complaint was mis-numbered and thus contained two sets of allegations numbers 17 through 20.

[2] In response to Westfield's contention that each of the Petitioners is in some manner connected to Interstate and Lumber Center, Defendants submit the Affidavit of Mary Moir, who states that she is not an officer, director, shareholder, or employee of Interstate or Lumber Center. She omits, however, that her husband is the director, as well as the secretary and clerk, of Interstate.

Complaint, ¶¶22-24.  On January 29, 2004, Konover served a Motion for Judgment Affirming Agency Decision Pursuant to Mass. Gen. L. c. 30A.  Id., ¶25.  Home Depot and the Commonwealth joined in that motion.  Id.  Petitioners opposed the motion and, on February 26, 2004, filed a motion for leave to take discovery and to supplement the administrative record (the "Discovery Motion") which, if allowed, would have substantially delayed adjudication of the action.  Id., ¶26.

On March 10, 2004, the Court heard argument on the Motions for Judgment Affirming Agency Decision.  See Complaint, ¶27.  At that time, the Parties all believed that the Discovery Motion was still pending.  Id.  At the hearing, Petitioners' counsel stated that if the Court denied their Discovery Motion, and thus, if the record was not supplemented with further evidence, then the agency decision would have to be affirmed.  Id.  Thereafter, the Court announced that another judge had, in fact, denied the Discovery Motion.  Id.  The Court gave the Petitioners the opportunity to move for reconsideration of that decision, agreeing not to rule on the Motion for Judgment Affirming Agency Decision until the Discovery Motion was finally resolved.  Id.

On April 28, 2004, the Court denied the Petitioners' Motion for Reconsideration of the Discovery Motion.  See Complaint, ¶28.  By Memorandum and Decision dated May 18, 2004, the Court affirmed the agency decision and entered judgment to that effect on June 21, 2004.  Id.  The Petitioners purportedly filed a Notice of Appeal on July 19, 2004.  Id., ¶30.  Lumber Center and Interstate funded the Administrative Review and are now funding the Petitioners' efforts at the appellate level (the "Appeal").  Id., ¶¶29, 31.

B. **Alleged Tortious Conduct**

Westfield entered into a contract with Home Depot for the sale of property at 514 East Main Street, Westfield, Massachusetts.  See Complaint, ¶32.  At all relevant time, the defendants

were aware of the contractual and business relationship between Westfield and Home Depot. Id., ¶33. Petitioners' appeal, which is being funded by Interstate and Lumber Center, is frivolous, objectively baseless, commenced without probable cause, and a sham. It was commenced solely to delay, frustrate and/or prevent the Home Depot development. See id., ¶¶34-35. The petitioners are not motivated by legitimate environmental concerns in challenging the Home Depot development but, rather, seek to avoid the competition that Home Depot would provide to defendants Interstate and Lumber Center. See id., ¶36. Defendants seek to delay and/or stop the Home Depot development, maliciously interfering with Westfield's contractual and advantageous business relationship with Home Depot. Id. As a consequence of Defendants' unfair and malicious acts and conduct, and the delays caused thereby, Westfield has sustained damages. Id., ¶37.

## ARGUMENT

I. **THE MASSACHUSETTS ANTI-SLAPP STATUTE IS A PROCEDURAL RULE THAT DOES NOT APPLY IN FEDERAL COURT**

This Court, considering facts virtually identical to those at issue here, has concluded that the Massachusetts Anti-Slapp statute, Mass. Gen. L. c. 231, §59H, is a procedural statute that is inapplicable to a federal court sitting in diversity. Stuborn Limited Partnership v. Bernstein, 245 F.Supp.2d 312, 316 (D. Mass. 2003). In Stuborn, Stuborn Limited Partnership's predecessor applied for and received a permit to redevelop the Cape Codder Hotel and its ancillary buildings into a residential condominium complex. Id., p. 313. The Master Deed for the condominium complex included, *inter alia*, a provision reserving the "right and power, without the consent of any other Unit Owners" for Stuborn to construct the Main Building under the Special Permit by October 16, 1999. Id. The plaintiffs vehemently opposed the construction of the Main Building.

As the Court noted, it was:

> an understatement to remark that the Bernsteins [condominium owners], along with other residents including the Cape Codder Condominium Trustees (Trustees), strongly opposed the construction, and that the Bernsteins in particular left no path to legal recourse unexplored. That is, a serious campaign to stop the construction of the Main Building ensued, allegedly lead by Frederick Bernstein (a lawyer).
>
> There is no dispute that the Bernsteins challenged the legality of the Main Building Construction in various forums, when possible appealed the consistently adverse rulings, and failed to obtain a favorable ruling at any point along the way.

Id., p. 314. "In spite of the Bernsteins' campaign to halt the Main Building construction, no agency board or court agreed with the Bernsteins that the Main Building violated any laws." Id.[3] After construction was completed, Stuborn sued the Bernsteins alleging, *inter alia*, breach of contract, tortious interference with contractual relations and advantageous business relationship. Stuborn contends that "the Bernsteins' litigious behavior caused an eighteen month delay in the construction of the Main Building" thus costing Stuborn increased construction costs, additional expenses and legal costs, additional building material costs, and damages to its reputation.

The Court denied the Bernsteins' Special Motion to Dismiss under the Massachusetts Anti-Slapp statute, holding that the statute is procedural and thus inapplicable in federal court. See id., p. 316. The Court reasoned that under the federal rules of civil procedure, inferences are to made in favor of the plaintiff on motions to dismiss, but that the Massachusetts Anti-Slapp statute "shifts these presumptions and authorizes defendants in a SLAPP suit to file a special motion to dismiss in the infancy of the lawsuit." Id., p.314. In light of the competing procedures, the Court held that the Anti-Slapp statute is procedural in nature and conflicts with federal rules of procedure. Id., p. 316. Accordingly, the Court ruled:

---

[3] The Court outlined the Bernsteins' efforts to halt the construction which, similar to this case, included numerous administrative agency and superior / land court appeals, as well as an appeal before the Massachusetts Appeals Court.

> Because the procedures provided in the Anti-Slapp statute conflict with the Federal Rules of civil procedure, it is unnecessary to reach the merits of the Bernsteins' motion. The expedited nature of the Anti-Slapp procedures – which as noted above differs significantly from the Federal Rules of Civil Procedure framework – has the obvious drawback of pushing the court to make factual findings and legal conclusions sometimes prematurely. The parties dispute the motives animating the Bernsteins' enduring campaign against the construction of the Main Building. Such disputes over motive are inherently fact-laden; therefore, it is preferable not to attempt to resolve them on the scant evidence of record at this time.

Id., p. 316.

The Anti-Slapp statute likewise does not apply in this action. Accordingly, the Court should deny Defendants' Motion.

II.  **EVEN IF THE MASSACHUSETTS ANTI-SLAPP STATUTE DOES APPLY, PLAINTIFF HAS ESTABLISHED THAT DEFENDANTS' PETITIONING ACTIVITY WAS DEVOID OF ANY FACTUAL SUPPORT**

   A.  *Defendants Lack Standing To Pursue The Appeal*

Even if the Massachusetts Anti-Slapp statute does apply, it does not protect petitioning activity that is devoid of any reasonable factual support or arguable basis in law. See 231, §59H. Westfield has alleged that the appeal was a sham and devoid of any factual support or basis in law. This is so because under no set of circumstances do the facts warrant a reversal of the administrative decision. Further, at least two of the petitioners withdrew from the litigation prior to the filing of the Notice of Appeal (which was fraudulently filed on behalf of all ten petitioners) and, thus, the appellants lack standing to pursue the appeal for failure to maintain ten (10) petitioners.[4]

   1.  *Petitioners Withdraw From The Litigation*

On March 22, 2004, while the Superior Court litigation was pending and many months before the filing of the Notice of Appeal, Petitioners Joseph B. Mitchell and Teresa K. Mitchell

---

[4] Konover Development Corporation has filed a Motion to Dismiss the Petitioners' Appeal in the underlying litigation, which is scheduled for hearing at the end of the month.

informed Attorney Pudlo, counsel for the Petitioners, that they did not wish to proceed with the litigation. Attorney Pudlo failed to notify the Court of the Mitchells' withdrawal; misleadingly purported to continue to represent the Mitchells in the Superior Court action; and filed a Notice of Appeal on behalf of the Mitchells with full knowledge that the Mitchells had not authorized him to do so.

Mr. Mitchell has submitted an affidavit in support of the Motion to Dismiss Appeal now pending in the Superior Court, attached hereto at Tab 1, detailing Mr. and Mrs. Mitchell's involvement in, and withdrawal from, the litigation. Mr. Mitchell was originally approached by his neighbor, C. David Trader, a friend of the Battistoni family (owners of Interstate Building Supply, Inc., a competitor of Home Depot), to sign a petition to prevent the development of Home Depot in Westfield, Massachusetts. See Tab 1, ¶¶2-3. Mr. Trader informed Mr. Mitchell that he wanted to assist Interstate Building Supply, Inc., which was not only owned by his friend but which had, in the past, assisted Mr. Trader's employer. Id., ¶3. Mr. Mitchell and his wife agreed to sign the petition. See id.

The Mitchells later learned that the Petitioners had lost at each stage in the administrative proceedings and were appealing to the Superior Court. See Tab 1, ¶4. By letter dated February 5, 2004, Attorney Pudlo informed them that the DEP had ruled against them, inquired as to how they wished to proceed, and informed them of a meeting scheduled on February 16, 2004. See id., ¶5. The Mitchells concluded that they had had enough of the litigation and decided to inform the group that they wished to withdraw; however, the February 16th meeting was canceled and never rescheduled. Id.

Thereafter, by letter dated March 22, 2004, the Mitchells informed Attorney Pudlo that:

[W]e have pursued the Westfield Home Depot / Massachusetts Department of Environmental Protection issues as far as we want to take this matter. We no longer want

> to be part of the group pursuing this action.  <u>Therefore, effective immediately, we withdraw from the group.</u>  We trust that you will inform all interested parties.

See <u>id</u>., ¶6, <u>Tab A</u> (emphasis added).  On April 5, 2004, Attorney Pudlo confirmed that he had received the Mitchells' letter and understood that they were no longer part of the Superior Court action.  <u>Id</u>., ¶6.  Attorney Pudlo then informed Mr. Mitchell that he and his wife had to remain on the caption in the Superior Court litigation but that including their name in the caption was meaningless and would have absolutely no effect on their substantive rights.  <u>See id</u>.

Attorney Pudlo continued to pursue the Superior Court action without ever informing the Court that two of the ten petitioners had withdrawn from the litigation.  The Superior Court denied Petitioners' Appeal.  On July 19, 2004, Attorney Pudlo filed a Notice of Appeal purportedly on behalf of all ten petitioners.  The Notice of Appeal included Joseph and Teresa Mitchell as parties despite their express instruction to the contrary.  <u>See</u> Notice of Appeal, attached hereto as <u>Tab 2</u>.  Attorney Pudlo failed to inform the Appeals Court that the Mitchells had withdrawn from the case.

In July 2004, a third Petitioner, Mark Siebert, informed Attorney Pudlo that he had decided to withdraw from the litigation.  Once again, Attorney Pudlo concealed this material fact from the Court; failed to file a timely Notice of Withdrawal on behalf of Mr. Siebert; and misleadingly purported to continue the appeal on behalf of Mr. Siebert.  Mr. Siebert has submitted an affidavit in connection with the Motion to Dismiss the Appeal pending before the Superior Court, attached hereto at <u>Tab 3</u>, explaining his involvement in and withdrawal from the litigation.

In or around early 2003, Mr. Seibert, who is a contractor in Westfield, was approached by Michale Breton, the owner of Lumber Center, Inc., a company with whom he does some business.  <u>See</u> Tab 3, ¶2.  Mr. Breton asked Mr. Seibert to sign a petition to prevent the

development of a Home Depot in Westfield, Massachusetts. See id., ¶3. Mr. Seibert was not informed of any environmental issues associated with the development of the Home Depot project. See id. He nonetheless agreed to sign the petition because, for reasons wholly unrelated to any supposed environmental concerns, he did not want a Home Depot in Westfield. See id. When Mr. Seibert signed the petition, he was not informed that the issue could reach the courts or grow to the current magnitude. See id., ¶4. Nor did he ever speak with the lawyer representing the Petitioners, attend any meetings regarding the petition, or receive any updates about the status of the proceedings. See id., ¶5. Indeed, he only learned the status of the efforts by reading the newspaper. See id. He followed the case enough through the papers to know that the Petitioners had lost at all stages in the administrative process. See id.

In July 2004, Mr. Seibert learned, through an article in the newspaper, that Attorney Pudlo had filed an appeal on behalf of the original ten Petitioners in the Massachusetts Appeals Court. Mr. Seibert never authorized Attorney Pudlo to file an appeal on his behalf. See Tab 3, ¶6. By letter dated July 25, 2004, Mr. Seibert informed Attorney Pudlo that he wanted nothing to do with the appeal. The letter stated, in relevant part:

> It has come to my attention that you have filed a notice of appeal in Hampden Superior Court. This is the eighth appeal with us loosing (sic) each of the previous seven over the last couple years. I may be wrong, but I believe this eighth appeal will end with the same result as the last seven and this outcome could cost us all due to the most certain request for a bond his time, which I also believe will be granted by the court.
>
> I very much believe that having a Home Depot in this town is not going to benefit anyone but only hurt the business owners who will have to compete with the home improvement giant. . . .
>
> In light of all my reasons for not wanting another home improvement super store built I also believe it will not be stopped and will eventually happen. For this reason, and the loss of seven previous appeals, I feel it has gone far enough and I want you to take my name off the list of people opposing the construction of the Westfield Home Depot. I do not want a connection to any further action that the other nine clients may want to take including this latest appeal to the Hampden Superior Court.

See id., ¶7 (emphasis added).

Mr. Pudlo did not respond to Mr. Siebert's letter. Accordingly, on August 10, 2004, Mr. Siebert re-sent his letter to Attorney Pudlo by certified mail, return receipt requested. See Tab 3, ¶8 and Tab B. Attorney Pudlo signed for the letter, see id. ¶8 and Tab C, yet never responded to Mr. Siebert. Mr. Seibert never spoke to Attorney Pudlo. See id., ¶8.

It was not until September 14, 2004, when Attorney Pudlo's actions became public, that he filed a Notice of Withdrawal on behalf of the Mitchells, Mr. Siebert and Brian Burke, a fourth petitioner who had given Attorney Pudlo notice of his desire to withdraw from the case. See Notice of Withdrawal, attached hereto as Tab 4. Konover Development Corporation's Motion to Dismiss the Appeal for lack of standing, which Home Depot has joined, is pending before the Superior Court.

      2.    *Absent the Requisite "Ten Residents," Petitioners Lack Standing To Pursue Appeal*

Without "ten residents" of Westfield, the Petitioners lack standing to pursue the appeal. The Code of Massachusetts Regulations provides that, *inter alia,* any ten residents of the city or town where the land is located may request the Department of Environmental Protection to issue a Superseding Order whenever a conservation commission has issued an Order of Conditions allowing, conditioning or prohibiting work. See 310 CMR 10.05(a) and (b)(3). Under the governing regulations, the ten residents *together* constitute a "person" with standing to challenge the agency decision.

In November 2003, after losing at each stage of the administrative proceedings, the Petitioners sought judicial review of the administrative decision under Mass. Gen. L. 30A, §14, which provides that "any *person* . . . aggrieved by a final decision of the agency in an

adjudicatory proceeding . . . shall be entitled to a judicial review thereof . . . ." Mass. Gen. L. c. 30A further provides that "[a]gencies may by regulation not inconsistent with this section further define the class of persons who may become parties." Id., §1(3). As indicated, the DEP by regulation defines a person for purposes of standing to appeal a decision as, among other things, "any ten residents of the city or town where the land is located."

The Mitchells' withdrawal from the litigation would result in less than ten residents in the action and divest the remaining Petitioners of standing to continue the litigation. See Mass. Gen. L. c. 30A, §§1(3) and 14; 310 CMR 10.05(a) and (b)(3). See also Litton Business Systems, Inc. v. Commissioner of Revenue, 383 Mass. 619, 623 (1981) (dismissing taxpayer action subject to opportunity for plaintiffs to prove that at least ten of the named plaintiffs are taxable inhabitants of the city); Richards v. Treasurer and Receiver General, 319 Mass. 672, 679 (1946) (dismissing taxpayer petition because the requisite number of taxpayers did not reside in the affected district). Attorney Pudlo thus concealed their withdrawal from the Court and then filed a Notice of Appeal on their behalf, despite that he lacked their authority to do so.

In this case, as in Litton and Richards, Petitioners lacked the number of petitioning residents required by the governing regulations. The appeal was filed without standing, and thus was frivolous, objectively baseless, and a sham. Absent standing, Petitioners' appeal was devoid of any reasonable basis or any arguable basis in law. Massachusetts General Law c. 231, §59H does not operate to protect such activity. This Motion to Dismiss should therefore be denied.

**B.     *Defendants' Appeal Lacks Factual or Legal Merit***

Petitioners' appeal in the underlying action is objectively baseless. The relevant regulation, 310 CMR 10.05(7), requires an aggrieved party to file a request for a Superseding Order within ten days from the date of issuance of the original order. Petitioners do not dispute

this. Rather, Petitioners argue that, as a matter of fact, the DEP erred in finding that the date of issuance of the Order of Condition was March 25, 2003 or, at the latest, March 26, 2003. Petitioners argue that their April 11, 2003 request for a Superseding Order of Condition was timely. This argument is without any factual basis. The Commission hearing was held on March 25, 2003, and the Order of Conditions was approved at the March 25, 2003 hearing. The Order of Conditions, on its face, states that its date of issuance is <u>March 25, 2004</u>, and the Corrected Order of Conditions expressly states that the corrections "<u>Do Not Effect</u> the conditions ordered by the Westfield Conservation Commission nor the issuance date of <u>3/25/03</u> as they address clerical matters only." (emphasis added) The record is devoid of any facts to support the Petitioners' contention that their request for a Superseding Order of Conditions was timely. Accordingly, their appeal lacks factual support and is a sham intended to further delay the Home Depot development.[5]

### III.  **Plaintiff Has Stated Claims For Which Relief Shall Be Granted**

#### A.  *Plaintiff Has Met Its Burden Of Pleading A Claim For Tortious Interference With Contract*

To state a claim for tortious interference with contract, Westfield must allege: (1) the existence of a contract with another person; (2) that Defendants knew of the contract; (3) that

---

[5] Indeed, one of the original petitioners, Mr. Siebert, has confirmed that, at least in his mind, the litigation was not motivated by a legitimate concern for the environment, but rather by a desire to prevent the development of the Home Depot <u>and</u> that the Appeal was, at least in his mind, without merit:

> It has come to my attention that you have filed a notice of appeal in Hampden Superior Court. This is the eighth appeal with us loosing (sic) each of the previous seven over the last couple years. I may be wrong, but I believe this eighth appeal will end with the same result as the last seven and this outcome could cost us all due to the most certain request for a bond his time, which I also believe will be granted by the court.
>
> I very much believe that having a Home Depot in this town is not going to benefit anyone but only hurt the business owners who will have to compete with the home improvement giant. . . .
>
> In light of all my reasons for not wanting another home improvement super store built I also believe it will not be stopped and will eventually happen.

<u>See</u> Siebert Aff., attached hereto as <u>Tab 3</u>.

Defendants improperly interfered with the contract; and (4) damages.  United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990); Owen v. Williams, 322 Mass. 356, 360 (1948).  Westfield has met this burden.  See G. E. Capital Mortgage, supra (in considering a Rule 12(b)(6) motion to dismiss, a court should not decide questions of fact, but rather must view the facts present in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party).

Westfield has pled the existence of a contract with Home Depot.  See Complaint, ¶ 32.  It has also alleged that at all relevant times, Defendants were aware of Westfield's contractual relationship with Home Depot.  See id., ¶ 33.  Westfield has pled that Defendants improperly interfered with the contract.  See id., ¶ 36.  Westfield has alleged that it incurred damages as a result.  See id., ¶ 37.

Defendants argue that they lacked knowledge of this contractual relationship.  This argument is misplaced.  Westfield has satisfied the pleading requirements under Fed. R. Civ. P. 8 and has alleged a cognizable claim under Massachusetts law.  On a Motion to Dismiss, the Court must take all allegations as true, and determine whether, based on such allegations, plaintiff states a claim for which relief can be granted.  G.E. Capital, 319 F. Supp. at 130.  Defendants' attempt to challenge the merit of such factual allegations is not permitted at this stage of the proceedings.  Moreover, Defendants' assertion that it lacked knowledge of the relationship between Westfield and Home Depot lacks credibility.  Although Konover Development Corporation was the entity that applied to the Westfield Conservation Commission for an Order of Conditions, Defendants knew that Westfield was listed as the owner of the property.  See Defendants' Motion to Dismiss, p. 8.  Defendants knew that a Home Depot store was to be

constructed on the property owned by Westfield. Under the circumstances, there is no basis for this Court to find that they lacked knowledge of the contractual relationship with Home Depot.

Westfield also alleges that Defendants willfully and maliciously instituted and continued the proceedings to prevent the development of a Home Depot store that would compete with Defendants, thereby interfering with Home Depot's ability to consummate the purchase of Westfield's property for the purpose of building a Home Depot. See Complaint, ¶ 36. Defendants argue that Westfield "makes no factual allegations" to support this proposition. See Defendants' Motion to Dismiss, p. 10. Defendants have ignored paragraphs sixteen (16) through thirty-seven (37) of the Complaint, which comprehensively set out the course of improper means utilized by the Defendants in an effort to interfere with Westfield's contractual relationships with Home Depot and achieve the ultimate goal of delaying and/or preventing the Home Depot development. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262 (1991). ("a civil action is wrongful if its initiator does not have probable cause to believe the suit will succeed, and is acting primarily for a purpose other than that of properly adjudicating his claims"). Westfield has pled that the delays due to Defendants' acts and conduct have caused Plaintiff damages. See Complaint, ¶ 37. Westfield has sufficiently pled the elements of tortious interference with contract.

> **B.      *Plaintiff Has Met Its Burden Of Pleading A Claim For Tortious Interference With Advantageous Business Relationships***

Westfield has also sufficiently pled its claim for tortious interference with advantageous business relationships. To state such a claim, a plaintiff must plead: (1) a business relationship; (2) defendant's knowledge of such relationship; (3) defendant's intentional and malicious interference with the business relationship; and (4) plaintiff's loss of advantage directly resulting from the defendant's conduct. See Chumawa Country Golf, Inc. v. Wnuk, 9 Mass. App. Ct. 506

(1980); Walker v. Cronin, 107 Mass. 555 (1871). Contrary to Defendants' assertions, Westfield has alleged facts to support each of the elements for a claim of interference with advantageous relations.

Westfield has pled the existence of business relationship between it and Home Depot; that Defendants knew of this business relationship; that Defendants have intentionally and maliciously interfered with that relationship; and that as a result of Defendants' intentional and malicious interference with that relationship, Westfield has suffered damages. See Complaint, ¶¶ 32, 33, and 48.

## **CONCLUSION**

For the foregoing reasons, Westfield East Main Street LLC requests that the Special Motion To Dismiss be DENIED.

                          WESTFIELD EAST MAIN STREET LLC
                          By its attorneys,

                          /s/ David A. Brown
                          David A. Brown, BBO# 556161
                          Pamela A. Zorn, BBO# 640800
                          Sherin and Lodgen LLP
                          101 Federal Street
                          Boston, Massachusetts 02110
Dated: October 6, 2004           (617) 646-2000