UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case #04-30170-MAP

|  |  |  |
|---|---|---|
| WESTFIELD EAST MAIN STREET LLC, Plaintiff | ) ) ) | |
| v. | ) ) ) ) | DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER |
| C. DAVID TRADER, JEAN M. TRADER, JOSEPH B. MITCHELL, TERESA K. MITCHELL, DONALD GOVE, MARK D. SIEBERT, BRIAN BURKE, MICHAEL BRETON, BRADFORD MOIR, MARY MOIR, INTERSTATE BUILDING SUPPLY, INC., and LUMBER CENTER, INC., Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Now come the Defendants, through Counsel, and submit their opposition to the Plaintiff's Motion for Protective Order filed with this Court on or about April 11, 2005.

**Factual and Procedural Summary**

The Plaintiff is the owner of a certain parcel of land known and numbered 514 East Main Street, Westfield, Massachusetts (hereinafter referred to as the "premises"). The Defendants are individuals and residents of the City of Westfield and two business entities in the City of Westfield and in Southwick, Massachusetts.

At some point in the late winter and early spring of 2003, the Defendants became aware of a proposed development of the premises. The proposed development required

action by the Westfield Conservation Commission to approve the development plan from the point of its impact upon the environment.

The Westfield Conservation Commission received a Notice of Intent from Konover Development Corporation (hereinafter referred to as "Konover") in February of 2003 and a public hearing was the scheduled and conducted on March 25, 2003. Following the hearing the Westfield Conservation Commission (hereinafter referred to as the "ConCom") issued an Order of Conditions, followed some days later by an "Amended Order of Conditions".

On April 10, 2003 the individual Defendants and others petitioned the Massachusetts Department of Environmental Protection (hereinafter referred to as the "DEP") for a Superseding Order of Conditions by Express Mail and hand delivered a copy to the Western Regional Office of the DEP on April 11, 2003. On April 15, 2003, after receiving an *ex parte* communication from the Petitioner, Konover stating that the request was untimely and should be denied, the DEP denied the request.

Ten of the individuals then requested an Administrative Hearing on the issue of timeliness. After several motions, including an attempt to obtain information which the individuals designated as "dispositive", their efforts were denied, initially and upon reconsideration. The individuals then filed suit pursuant to Massachusetts General Laws c. 30A for an administrative review, once again seeking the dispositive information from the Con Com and the DEP. All requests were denied without any statement of the underlying reasons therefore.

Central to all of the claims raised by the individuals in the DEP process and the lawsuit in Hampden County Superior Court was the allegation that the issue of timeliness was never heard in an evidentiary hearing and that the entire line of adverse decisions were plainly wrong from the initial DEP denial. The Defendants have always asserted that they have never had their "day in Court" and therefore appealed the Superior Court decision.

In the period following the filing of the lawsuit in Hampden Superior Court, the press carried several articles wherein Konover and its representatives threatened legal action against the individuals. It is the Defendants' contention that this tactic began to "scare off" some of the initial petitioners. Others simply decided that they did not want to proceed further, thereby ending then appeal.

This action was brought by the Plaintiff in October of 2004. The Plaintiff in this action was never a party or intervenor in the underlying state administrative and court actions. The Plaintiff in this action never participated in the underlying proceedings in any visible manner or made their presence known in these cases.

## **Argument**

This case involves claims by the Plaintiff that the Defendants interfered with the Plaintiff's contractual and business relationships. In this case, the Defendants have asserted, by way of various Motions to Dismiss, that their actions were simply an exercise of their right to petition granted under the Constitution of the United States of America and the Massachusetts Declaration of Rights.

Throughout the underlying state proceedings the Defendants (excepting the Defendants, Lumber Center, Inc., Interstate Building Supply, Inc. and Richard Battistoni) asserted and maintained that the initial decision by DEP on April 15, 2003 was both tainted and wrong.

Despite the continuing upholding of that decision by the Administrative Law Judge (hereinafter referred to as the "ALJ"), the Commissioner of Environmental Affairs and the Superior Court, the Defendants maintained that there was never any real evidence to support the contention made *ab initio* by Konover's *ex parte* communication to the DEP.

In exercising their right to petition, the defendants have always maintained that evidence is based upon <u>facts</u> or inferences reasonably drawn from <u>facts</u>. Absent an evidentiary hearing to determine the facts, the line of adverse decisions were no less poisoned and tainted than the initial DEP determination on timeliness.

Central to this case is whether the Defendants were exercising their rights or simply conducting a sham. At his deposition, C. David Trader testified that he was concerned with the issues of compensatory flood storage once he realized that it was not being addressed by the Con Com.(See Exhibit A attached hereto).

At all times the individual Defendants sought to "have their day in court", so to speak, but believed at each stage of the process that an erroneous initial decision was readopted throughout. The Superior Court, however, did concede that the Plaintiffs in that action were correct in asserting that the "date of issuance" the Con Com's Order of Conditions could not have been March 25, 2005 as the DEP had initially ruled. (See Exhibit "B" attached hereto) On that basis, the Defendants herein believed that the Court was "plainly wrong" in reasoning that there was ". . . evidence in the record . . . to support [the DEP's] conclusion."

This belief was premised on the fact that the DEP and the ALJ, despite requests for the same, refused to conduct an evidentiary hearing on the issue. Without an evidentiary hearing, there was no real factual evidence or facts established from which any reasonable inference might be drawn. The Massachusetts courts have held that to determine the issues identified in a particular case, relevant evidence must be provided to the finder of fact that has a rational tendency to prove the identified issue. **Commonwealth v. Pare, 43 Mass. App. Ct. 566, 686 NE2d 1025 (1997);** **Commonwealth v. Chertien, 383 Mass. 123, 417 NE2d 1203 (1981)**

In each case of a request for dispositive evidence in the state proceedings, strong opposition was filed to prevent the facts from being introduced into evidence. What the

Plaintiff is attempting to accomplish by its Motion for a Protective Order is another attempt to avoid dispositive evidence from finding its way before the Court.

In any case, where there is a clear and unambiguous dispute as to what facts are true, the fact finder cannot rely upon pleadings or arguments of Counsel in reaching any conclusions or make any findings of fact. The Federal Rules of Evidence clearly define "relevant evidence" as ". . . evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." **Fed. R. Evidence Rule 401**

The case at bar is one in which the facts that would support the Defendants' claims that they were exercising their constitutional right of petition are clearly relevant to the outcome of the litigation. The information sought in this limited discovery from the Con Com and the DEP would clearly demonstrate that the Defendants' actions were meritorious and that they would have prevailed. This is clearly relevant evidence to distinguish their actions from a mere "sham" attempt to block a development.

It is also quite curious to have the Plaintiff raise then issue of relevance and the issue of prior underlying actions when they never participated or intervened in those proceedings. There is nothing to indicate that the Plaintiff requires some protection from the evidence that the Defendants seek to adduce. It is not uncommon for the courts to deny any exclusion of relevant evidence where the evidence sought to be produced is related to or connected with potential affirmative defenses available to the Defendants. **Ferrara & Dimercurio v. St. Paul Mercury Ins. Co.,** _____ **F.3d** _____ **(1st Cir. 2001)**

Generally a protective order is sought when the moving party is seeking to avoid some harm that will result form the allowance of the introduction of such evidence that will outweigh its admissibility. **In Re: Columbia University Patent Litigation,** _____ **F.Supp. 2d** _____ **(D.C. Mass. 2004)** In this case, the Plaintiff has made no such showing, other than an assertion that the defendants sought and were denied this evidence in the state court proceedings.

In this case, the evidence sought in discovery will support the Defendants' claims that their pursuit of the matter in the state courts was legitimate and not designed to simply delay the development of the premises. In that light, it is clearly relevant to defend against the Plaintiff's claims that there was some tortuous interference with business and contractual relations.

### Conclusion

For all of the foregoing reasons, the Plaintiff's Motion should be denied.

The Defendants,
by their Attorney,


William J. Pudlo
P.O. Box 676
West Springfield, Mass. 01090
Telephone: (413) 739-4000

### Certificate of Service

I, William J. Pudlo, hereby certify that I have served a copy of the above pleading by mailing a copy of the same, postage prepaid, to Pamela A. Zorn, 101 Federal Street, Boston, Massachusetts 02110.

Dated: May 4, 2005

William J. Pudlo

\win\word\HomeDepotfederalOppositiontoProtectiveOrder

# Exhibit "A"

18

1    the ensuing 40, 42, 43 years, environmental laws have

2    changed.  I have not been made aware that there's been

3    any investigation into what impact that might have, and

4    that's my primary concern.  If that is met, Home Depot

5    is welcome to come.

6        Q.    When did you first become aware of the

7    possibility of a compensatory floodplain storage

8    concern?

9        A.    I can't remember exactly.  It was very early

10   in the game.  It was brought up during the conservation

11   commission meeting, I believe.  The subject was brought

12   up and the answer was there was no concern.

13       Q.    Do you recall who brought it up?

14       A.    I think it was volunteered by the people who

15   were behind the project.

16       Q.    Who said there was no concern?

17       A.    It was a joint conclusion reached, I guess,

18   by the conservation committee and the people pushing for

19   it because that was the conclusion of the meeting.

20       Q.    And did you agree with that or did you have

21   any -- Let me rephrase that.

22             Did you have any basis to disagree with that

23   conclusion?

24       A.    Just what I said earlier, and that is, I know

19

1    that when you're going to replace a building with a

2    bigger building, I know that requires more compensatory

3    storage.  And I know laws change.  I just don't feel

4    that a good look was taken at it and still has not been.

5         Q.   How soon before the final decision by the

6    Westfield Conservation Commission was this first meeting

7    that you attended?

8         A.   Well, the conclusion was made at that

9    meeting.

10        Q.   Okay.  So that was the first meeting you

11   attended?

12        A.   Yes.

13        Q.   And that was a meeting at which the permit

14   was issued by the Westfield Conservation Commission for

15   the Order of Conditions?

16        A.   I think so.  I'm not a lawyer and I can't

17   remember the terminology.

18        Q.   How many meetings were there of the

19   conservation commission?

20        A.   That was the only one I attended.  There were

21   no others.

22        Q.   What discussions did you have with

23   Mr. Battistoni before attending the meeting about the

24   Home Depot coming to the Caldor location?

# Exhibit "B"

Body Ass'n v. Comm'r of Ins., 409 Mass. 770, 781 (1991).

The plaintiffs have not shown that the DEP's decision was not supported by substantial evidence. G. L. c. 30A, § 14 (7) (e). The order of conditions itself contains an issuance date of March 25. The corrected order states that the original order's date of issuance is March 25. The corrected order also states that it does not affect the original issuance date of March 25. The March 25 public hearing adjourned at 9:30 p.m., so it is unlikely that the Commission issued the order the same day. It is likely, however, that the Commission issued the order the following day, March 26. Furthermore, plaintiff Moir's affidavit discloses that he was present at the March 25 hearing at which the order was approved, that on March 28, he requested a copy of the issued order, and that he received a copy of the order on April 1. There is no evidence in the record to dispute a March 26 issuance date. The evidence in the record is such "as a reasonable mind might accept as adequate to support [the DEP's] conclusion. See Salaam, 43 Mass. App. Ct. at 39.

There was no clear error in the Judge's interpretation of DEP policy. The Judge's application of corrected final order policy to whether the time period began to run upon issuance of the corrected order of conditions is, therefore, entitled to deference. See Hurst, 428 Mass. at 120. Moreover, the plaintiffs have not demonstrated that the DEP's failure to hold an evidentiary hearing to determine the actual date of issuance of the order was arbitrary or capricious. G. L. c. 30A, § 14 (7) (g). Again, there was substantial evidence that the Commission issued the order on March 26, and the plaintiffs did not present evidence to the contrary, nor did the plaintiff's comply with the cooperative discovery requirements of the regulations.

5