UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case #04-30170-MAP

| | |
|---|---|
| WESTFIELD EAST MAIN )<br>STREET LLC, Plaintiff )<br>)<br>v. )<br>)<br>)<br>C. DAVID TRADER, )<br>JEAN M. TRADER, )<br>JOSEPH B. MITCHELL, )<br>TERESA K. MITCHELL, )<br>DONALD GOVE, )<br>MARK D. SIEBERT, )<br>BRIAN BURKE, )<br>MICHAEL BRETON, )<br>BRADFORD MOIR, )<br>MARY MOIR, )<br>INTERSTATE BUILDING )<br>SUPPLY, INC., and )<br>LUMBER CENTER, INC., )<br>**Defendants** ) | DEFENDANTS' SUPPLEMENTAL<br>MEMORANDUM IN SUPPORT<br>OF SPECIAL MOTION TO DISMISS |

Now come the Defendants and present, through Counsel, their Supplemental Memorandum in support of their Special Motion to Dismiss, upon the Court's reconsideration.

**Factual and Procedural Background**

The Plaintiff commenced the above captioned action in September of 2004 by filing and serving its Complaint. This action was commenced following a lengthy series of appeals stemming from action taken by the Westfield Conservation Commission

(hereinafter referred to as the "WCC") which issued an Order of Conditions under the Massachusetts Wetlands Protection Act.

The individual Plaintiffs, through Counsel, filed a pleading titled "Special Motion to Dismiss" pursuant to the provisions of M.G.L. c. 231, §59H (hereinafter referred to as the "Anti-SLAPP" statute). This Court, in denying the Defendants' motion, made reference to the decision of Judge Lasker in **Stubborn Ltd. Partnership v. Bernstein, 245 F. Supp. 2d 312 (D. Mass. 2003)**, but allowed for a reconsideration of its Order. The Court also noted that the Court in **Stubborn Ltd. Partnership, supra.** following the **Erie v. Tompkins, 304 U.S. 64 (1938)** and its "progeny", the provisions of the Anti-SLAPP statute were deemed "predominantly procedural" and therefore were pre-empted by Rule 12 of the Federal Rules of Civil Procedure and therefore was inapplicable.

In the time between the Court's Order, denying the Defendants' motion, and the filing of the Defendants' motion for reconsideration, the Massachusetts Supreme Judicial Court issued an opinion wherein the scope and nature of the Anti-SLAPP statute was examined in great detail, and ruled that the "procedural mechanism" contained in the statute was a component for enforcing a constitutional right recognized by the Massachusetts Legislature. **Kobrin v. Gastfriend, 443 Mass. 327 (2005)** This Memorandum is supplemental to the Defendants' motion and memorandum heretofore filed with the Court.

**Legal Argument**

In order to properly examine the impact of the decision of the Massachusetts Supreme Judicial Court in **Kobrin, supra.,** upon the ruling in **Stubborn Ltd. Partnership, supra.,** it is important to review the elements of each decision.

Judge Lasker fashioned his ruling on the Anti-SLAPP statute around the application of the so-called **Erie** doctrine of 1938. However, he fairly notes that the First Circuit has never ruled on the issue of whether the Anti-SLAPP statute was "purely procedural".

In his analysis, Judge Lasker cites a prior Massachusetts District Court decision (**Baker v. Coxe, 940 F.Supp. 409 (1996)**) which ruled that the imposition of additional procedures in certain kinds of litigation in state courts does not "trump" Fed.R.Civ. P. 12(b)(6). He goes on the state that the Anti-SLAPP statute's "plain language" reflects procedural mandates that rearrange the course of federal litigation.

The Court then opined that the Anti-SLAPP statute "shifted" presumptions and created "competing procedures". Following this analysis, the Court then opined that the statute was "predominantly procedural" in nature and directly conflicted with the Federal Rules of Procedure.

What the Court did not have to assist it in its analysis was the interpretation by the Massachusetts Supreme Judicial Court in **Kobrin** supra. In his analysis, Judge Lasker determined what the "plain language" of the Anti-SLAPP statute meant. The Court in **Kobrin** examined that issue and opined in a different manner.

The Court in **Kobrin** reviewed the statute in the light of its plain meaning. The Justices concluded that the statute was enacted to provide a "remedy" for citizens who are sued when the exercise their constitutionally protected right to petition. The Court further concluded that the statute employs a number of mechanisms to protect these rights. Included among these "mechanisms" was the "special motion to dismiss"

The Court then makes a close analysis of the "plain language" of the statute and Legislative history of the Anti-SLAPP statute. The first conclusion the Court reached was that a "right to petition", long recognized as a constitutional right, was intended to be protected. The Court made it clear that this substantive right is essential to our ability to redress grievances and this recognition was not merely a procedural act of the Legislature. The statute essentially was determined to "extend the protection of the First Amendment right which has long been constitutionally protected.

As a result, the Massachusetts Legislature, the Court determined, created a safe harbor for the rights of Massachusetts citizens to petition government without fear of redress. The "spirit" of the statute was to carve out a substantive scheme of protection of the right, including a procedural mechanism for protection of petitioning activities.

The Court in **Kobrin** opined that the right being protected bears no unbreakable bond to the procedural process. The Court stated that:

> "We care not whether a defendant seeking dismissal under the Anti-SLAPP statute is 'sincere' in his or her statements; rather, our only concern, as required by the statute, is that a person be truly 'petitioning' the government in the constitutional sense." **Kobrin supra. at 338**

It is clear from that point of analysis that the Court was not focusing upon a procedural scheme, but on the substantive right being offended.

Finally, the application of the so-called **Erie** doctrine must be addressed. While the **Erie** case clearly placed application of all non-federal matters under state law, the doctrine has been modified greatly over the years. More recently, the Supreme Court in **Hanna v. Plummer**, 380 U.S. 460 (1965) ruled that the application of state law would be pre-empted by federal law if the state law "really regulated procedure" citing **Sibbach v. Wilson & Company**, 312 U.S. 1 (1941)

In **Hanna**, Justice Frankfurter opined that the test to be applied to a particular case is whether the failure to apply state law was likely to result in "forum shopping" and the degree to which the failure to apply state law would unfairly discriminate against citizens of the forum state. **Hanna, supra. at 466-469**. In this case, we clearly have a Plaintiff, who, relying upon the ruling in **Stubborn Ltd. Partnership supra.**, has sought to seek damages in a classic SLAPP suit in the forum of this Court rather than the state Court simply to shop for the procedural advantage. Further, the failure to apply the provisions of the statute in this case will render the citizens of Massachusetts helpless in the face of such litigation brought by large corporations or interests.

In effect, the Court would be violating the Rules Enabling Act by failing to apply the statute. It would be an exercise of judicial amendment of a substantive right granted to Massachusetts citizens by its Legislature. The Rules Enabling Act was not meant to effect such a result. While the power of the Court is broad under the Act, it is limited by the proviso that it cannot "abridge, enlarge or modify any substantive right." **28 U.S.C §2072 (b)** In this case, the failure to apply the provisions of the Anti-SLAPP statute would, in effect, abridge the right to petition protected thereunder.

Finally, there has evolved a line of cases which create further exceptions to **Hanna**. The analysis given in these cases indicates that there is further examination of the impact of the failure to apply state law that must be considered. In **Olympic Sports Products, Inc. v. Universal Athletic Sales Company, 720 F.2d 910 (C.A. 9th) certiorari denied 474 U.S. 1060 (1985)** the Court stated:

> "First we must determine if the Federal Rule and State Rule are coexistensive. If the Federal Rule does not address the situation, there would be no conflict between State and Federal Rules. We would then apply the Erie analysis to determine if the Federal Court should enforce the State Rule. If the Federal Rule does not address the situation, there would be an unavoidable conflict between the State and Federal Rules. We would then apply the Hanna analysis: if the Federal Rule is within the scope of constitutional power and the Rukles Enabling Act, it applies unless the Erie considerations are so strong that they can justify interrupting the normal function of the Federal Court process." **Olympic Sports Products, Inc. at 914-915**

Thus, under the foregoing analysis, if the federal rule (here Rule 12(b)) does not address the situation (protection of the Defendants' constitutional and substantive right to petition), the Court may apply the State law. Further, where there is no conflict, and the failure to apply state law would thwart the Legislative intent, the Court should apply the law of the state. **Jones v. Krautheim, 208 F.Supp. 2d 1173 (D.C. Colo. 2002)**

## Conclusion

For all of the forgoing reasons, the Court should allow the Defendants' Special Motion to Dismiss and assess Attorney's fees and costs, pursuant to M.G.L. c. 231, §59H.

The Defendants,
by their Attorney,

_____
William J. Pudlo
P.O. Box 676
West Springfield, Mass. 01090
Telephone: (413) 739-400

## Certificate of Service

I, William J. Pudlo, hereby certify that I have served a copy of the above pleading by mailing a copy of the same, postage prepaid, to Pamela A. Zorn, 101 Federal Street, Boston, Massachusetts 02110.

Dated: October 13, 2005

_____
William J. Pudlo

\win\word\HomeDepotFederalSupplementalMemorandumonDismissal