UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WESTFIELD EAST MAIN STREET LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. 04-30170-MAP |
| | ) | |
| C. DAVID TRADER, JEAN M. TRADER, | ) | |
| DONALD GOVE, MICHALE BRETON, | ) | |
| BRADFORD MOIR, MARY MOIR, | ) | |
| INTERSTATE BUILDING SUPPLY, INC. and | ) | |
| LUMBER CENTER, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COUNTERCLAIMS

More than a year and a half after Plaintiff filed its Complaint, after the close of discovery,

and just weeks before the final pre-trial conference, Defendants have asserted baseless

counterclaims against the Plaintiff. The Court should strike Defendants' counterclaims as

grossly untimely. Moreover, Defendants' counterclaims are devoid of any merit and fail to state

claims upon which relief should be granted. Accordingly, the Court should dismiss the

Defendants' Counterclaims under Fed. R. Civ. P. 12(b)(6).

Procedural Background

On August 31, 2004, Plaintiff Westfield East Main Street LLC ("Westfield") filed a

Complaint against C. David Trader, Jean M. Trader, Donald Gove, Michael Breton, Bradford

Moir, Mary Moir (collectively, the "Individual Defendants") and Interstate Building Supply, Inc.

("Interstate") and Lumber Center, Inc. ("Lumber Center" and with Interstate, the "Corporate

Defendants"), alleging intentional interference with contractual relationships, intentional

interference with business relationships and, only as to the Corporate Defendants, violation of G.L. c. 93A. On September 22, 2004, the Individual Defendants filed a Special Motion to Dismiss pursuant to G.L. c. 231, §59H, and the Corporate Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). After a January 28, 2005 hearing, which Defendants' counsel failed to attend, the Court, by Memorandum and Order dated January 31, 2005, denied Defendants' Motions to Dismiss. In so doing, the Court stated, "[t]he failure of defendants' counsel to appear is puzzling. . . . In any event, a review of the papers inclined the court, even before hearing argument to deny the motions. . . . The Complaint on its face states a claim."

Almost three months later, on April 21, 2005, Defendants filed a Motion for Reconsideration of the Court's denial of their Motions to Dismiss. After a November 29, 2005 hearing, by Memorandum and Order dated November 30, 2005, the Court denied Defendants' Motion for Reconsideration. The Court stated that "Plaintiffs have [sic] made an adequate showing, in the context of a motion to dismiss, that the Defendants' exercise of [their] right to petition was devoid of any reasonable factual support or any arguable basis in law." In its order, the Court also stated:

> In accordance with the representations of the parties, all discovery will close on February 28, 2006. Counsel will appear again before this court for final pretrial conference on March 20, 2006 at 2:30 p.m.

Although the Court denied Defendants' Motion for Reconsideration on November 30, 2005, and pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendants' answer was due within ten (10) days after notice of the Court's denial of the motions, as of early February, Defendants had not answered Westfield's Complaint. Thus, by letter dated February 3, 2006, Westfield's counsel informed Defendants' counsel that:

> We have not yet received Defendants' Answer in the above matter. If we do not receive it within ten days, we will have no other choice but to file a Motion for Default.

- 2 -

- 3 -

By e-mail dated February 17, 2006, Defendants' counsel explained that he had to attend to some serious family health issues and asked that Westfield grant him a further extension and defer filing a motion for default. Despite the upcoming final pre-trial conference, and the extensive unexplained delay in answering the Complaint, Westfield agreed to extend Defendants' time to answer the Complaint to Thursday, March 2, 2006. On February 28, 2006, Defendants' counsel requested, and Westfield again agreed, to further extend the time by which Defendants had to answer the Complaint to Monday, March 6, 2006. On March 6, 2006, more than a year and a half after Westfield filed its Complaint, more than three months after the Court denied Defendants' Motion for Reconsideration, after the close of discovery, and just weeks before the final pre-trial conference, Defendants filed an Answer and Counterclaim.

<u>Factual Background</u>

A.     <u>The Administrative Action</u>

On or about February 15, 2003, Konover Development Corporation ("Konover") filed a Notice of Intent with the Westfield Conservation Commission (the "Commission") seeking a wetlands permit under Mass. Gen. L. 131, §40 for the proposed redevelopment of property at 514 East Main Street, Westfield (the "Proposed Development") into a Home Depot. <u>See</u> Complaint, ¶16. The Commission conducted a public hearing on March 25, 2003 and issued an Order of Conditions for the Proposed Development on the evening of March 25, 2003 or, at the latest, on March 26, 2003. <u>See id.</u>,¶17. On March 31, 2003, the Commission issued a Corrected Order of Conditions, which expressly stated that the corrections "<u>Do Not Effect</u> the conditions ordered by the Westfield Conservation Commission nor the issuance date of 3/25/03 as they address clerical matters only." <u>Id.</u>

Any ten residents of the City of Westfield had the right, pursuant to 310 CMR 10.05(7)(b) and (c), to petition to Department of Environmental Protection (the "DEP") to issue a Superseding Order of Conditions within ten business days of the issuance of the Order of Conditions. Petitioners, who at the time were ten residents of the City of Westfield, filed a petition for a Superseding Order of Conditions on April 11, 2003, more than ten days after the issuance of the Order of Conditions. See Complaint, ¶18. The DEP therefore denied Petitioners' petition as untimely. Id.

The Petitioners appealed the DEP's decision to the DEP's Office of Administrative Appeals on April 28, 2003. See Complaint, ¶20. On August 8, 2003, the Commissioner of the DEP issued a Final Decision dismissing the appeal for lack of jurisdiction based on the untimeliness of Petitioners' request. See id.,¶17[sic].  The Petitioners filed a motion for reconsideration, which the Commissioner denied on October 7, 2003. Id., ¶18 [sic].

B.    The Superior Court Action

On November 5, 2003, the Petitioners filed a complaint seeking judicial review of the DEP's decision pursuant to Mass. Gen. L. c. 30A (the "Superior Court Action"). See Complaint, ¶21. Konover and Home Depot intervened as party-defendants pursuant to Mass. Gen. L. c. 30A, §14(2) and Mass. R. Civ. P. 24(a). Id. at ¶¶22-24. Konover moved for Judgment Affirming Agency Decision on January 29, 2004. Id. at ¶25. Home Depot and the DEP joined in that Motion. Id. Petitioners opposed the Motion and, on February 26, 2004, filed a motion for leave to take discovery and to supplement the administrative record (the "Discovery Motion"). Id. at 26. The Court denied the Discovery Motion, and subsequently denied the Petitioners' Motion to Reconsider the Discovery Motion. See Complaint at ¶28.

- 4 -

On March 22, 2004, while the Superior Court Action was pending, two of the ten Petitioners, Joseph and Teresa Mitchell (the "Mitchells"), informed counsel that they no longer wanted to be involved in the action. By letter dated March 22, 2004, the Mitchells informed the Petitioners' attorney, Mr. Pudlo, that:

> [W]e have pursued the Westfield Home Depot/Massachusetts Department of Environmental Protection issues as far as we want to take this matter. We no longer want to be part of the group pursuing this action. <u>Therefore, effective immediately, we withdraw from the group.</u> We trust that you will inform all interested parties.

See Affidavit of Joseph Mitchell, ¶6 (emphasis added).[1] On April 5, 2004, Mr. Pudlo confirmed that he received the Mitchells' letter and understood that they were no longer a part of the litigation. See id., ¶7. Mr. Pudlo failed to notify either the Court or Defendants' counsel that the Mitchells had sought to withdraw from the litigation.

By Memorandum and Decision dated May 18, 2004, the Court affirmed the agency decision, holding, *inter alia*, that:

> The plaintiffs have not shown that the DEP's decision was not supported by substantial evidence. G.L. c. 30A, §14(7)(e). The order of conditions itself contains an issuance date of March 25. The corrected order states that it does not effect the original order's issuance date of March 25. The March 25 public hearing adjourned at 9:30 p.m., so it is unlikely that the Commission issued the order the same day. It is likely, however, that the Commission issued the order the following day, March 26. Furthermore, plaintiff Moir's affidavit discloses that he was present at the March 25 hearing at which the order was approved, that on March 28, he requested a copy of the issued order, and that he received a copy of the order on April 1. There is no evidence in the record to dispute a March 26 issuance date. . . . Again, there was substantial evidence that the Commission issued the order on March 26, and plaintiff did not present evidence to the contrary, nor did the plaintiff's [sic] comply with the cooperative discovery requirements of the regulations.

---

[1] The Affidavit of Joseph Mitchell was submitted to, and considered by, the Court in connection with the Special Motion to Dismiss.

00105243.DOC / 4

<u>See</u> <u>id</u>. Judgment entered against the Petitioners on June 21, 2004 (the "Judgment"). <u>Id</u>. The

Petitioners filed a Notice of Appeal on July 19, 2004 on behalf of the ten Petitioners (the

"Appeal"). <u>Id</u>.. at ¶30.

In July 2004, after Mr. Pudlo filed the Notice of Appeal, Petitioner Mark Siebert

informed Mr. Pudlo that he decided to withdraw from the litigation. <u>See</u> Affidavit of Mark

Siebert ("Siebert Aff."), ¶7.[2]  Mr. Siebert learned, through an article in the newspaper, that Mr.

Pudlo filed an appeal in the Massachusetts Appeals Court on behalf of the original ten

Petitioners. <u>See</u> <u>id</u>., ¶6. Mr. Siebert never authorized Mr. Pudlo to file an appeal on his behalf.

<u>Id</u>. By letter to Mr. Pudlo dated July 25, 2004, Mr. Siebert wrote:

> It has come to my attention that you have filed a notice of appeal in Hampden Superior
> Court. This is the eighth appeal with us loosing [sic] each of the previous seven over the
> last couple years. I may be wrong, but I believe this eighth appeal will end with the same
> result as the last seven and this outcome could cost us all due to the most certain request
> for a bond this time, which I also believe will be granted by the court.
>
> I very much believe that having a Home Depot in this town is not going to benefit anyone
> but hurt the business owners who will have to compete with the home improvement
> giant. . .
>
> In light of all my reasons for not wanting another home improvement super store built I
> also believe it will not be stopped and will eventually happen. For this reason, and the
> loss of seven previous appeals, I feel it has gone far enough and <u>I want you to take my</u>
> <u>name off the list of people opposing the construction of the Westfield Home Depot. I do</u>
> <u>not want a connection to any further action that the other nine clients may want to take</u>
> <u>including the latest appeal to the Hampden Superior Court.</u>

<u>See</u> <u>id</u>., ¶7 (emphasis added). Mr. Pudlo failed to inform either the Court or Defendants' counsel

of this withdrawal, and purported to continue the appeal on behalf of Mr. Siebert. Only after

being confronted by Defendants' counsel did Mr. Pudlo belatedly file Notices of Withdrawal of

---

[2] The Affidavit of Mark Siebert was submitted to, and considered by, the Court in connection
with the Special Motion to Dismiss.

00105243.DOC / 4

four of the Mitchells, Mr. Siebert and Brian Burke, another petitioner who requested to be removed from the litigation.

      C.      The Superior Court Dismisses The Appeal For Lack of Jurisdiction.

In September 2004, Konover moved to dismiss the appeal for lack of jurisdiction, arguing that, pursuant to 310 CMR 10.05 (7)(a)(5), the Petitioners lacked the requisite number of residents to maintain their claim. Throughout September and October 2004, Mr. Pudlo made no attempt to cure this jurisdictional defect. The Court heard argument on October 27, 2004. At no time after oral argument did Petitioners seek leave to substitute parties. By order dated February 15, 2005 (received by the parties in mid-March 2005), the Court dismissed the Appeal, holding that:

> [t]he withdrawal of the Mitchells, Siebert and Burke from the case reduced the number of residents remaining in the action to six, a total below the requirements of 310 CMR 10.05(7)(a). At this point, the analysis becomes an exercise in simple math. A request for DEP action under 310 CMR 10.05(7)(a)(5) requires a request from ten residents of the municipality where the land is located. When the Mitchell's [sic], Siebert, and Burke withdrew from the case, the plaintiffs no longer had the necessary number of citizens required to request action from the DEP. No substitute plaintiffs have been named to replace those who have withdrawn. Therefore, the six residents of Westfield that request DEP action are not enough to support this claim and dismissal is the appropriate action.

See Memorandum of Decision and Order on Defendant Konover Development Corporation's Motion to Dismiss Appeal and Defendants' Home Depot U.S.A., Inc. and Konover Development Corporation's Joint Motion for Appeal Bond, pp. 4-5. At no time between February 2005, when the Court entered judgment dismissing the appeal, and April 2005, when Plaintiffs' further appeal rights expired, did Plaintiffs move for leave to substitute.

Beginning in the Spring of 2005, after the Court dismissed the Appeal and after the expiration of the appeal period, Home Depot began construction of the Home Depot store in Westfield, Massachusetts.

## Argument

### I.  THERE IS NO INDEPENDENT CAUSE OF ACTION UNDER G.L. c. 231, 59H; THUS, THE INDIVIDUAL DEFENDANTS' CLAIM FAILS

The Individual Defendants claim that they suffered damages as a result of "Plaintiff's violation of Massachusetts General Laws Chapter 231, §59H" (the "Anti-Slapp Statute"). G.L. c. 231, §59H provides in pertinent part:

> In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right to petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. . . .If the Court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorneys' fees, including those incurred for the special motion and any related discovery matters.

See id.

Thus, the Anti-Slapp Statute provides a procedural mechanism by which an aggrieved party may seek expeditious dismissal of a lawsuit brought solely for the purpose of chilling that party's petitioning activity. See id. It does not, however, provide any basis for an independent cause of action. See id. Indeed, the Anti-Slapp statute provides only that "[i]f the court grants the special motion to dismiss," the Court award the moving party its costs and attorneys fees. See id. The statute provides for no other relief. See id.

The Individual Defendants already filed a Special Motion to Dismiss under the Anti-Slapp Statute. The Court rejected the Individual Defendants' arguments, denied the Motion to Dismiss, denied a Motion for Reconsideration, and ruled that "Plaintiffs have [sic] made an adequate showing, in the context of a motion to dismiss, that the Defendants' exercise of [their] right to petition was devoid of any reasonable factual support or any arguable basis in law." Defendants have failed to state a claim under the Anti-SLAPP statute.

00105243.DOC / 4

## II.   THE CORPORATE DEFENDANTS' CLAIM FOR MALICIOUS PROSECUTION FAILS ON THE FACE OF THE COMPLAINT.

The Corporate Defendants allege that "[t]he actions of the Plaintiff constitute a use of legal process with malice and without probable cause." See Counterclaim, ¶33. To state a claim for malicious prosecution, the Corporate Defendants must allege and sustain the burden of proving: (1) that Westfield formally initiated the proceedings; (2) that Westfield instituted or instigated the proceedings with malice; (3) that Westfield initiated or instigated the proceedings without probable cause; (4) that the proceedings have been legally and finally terminated in the Corporate Defendants' favor; (5) that Westfield's actions caused the Corporate Defendants to suffer damages. See Sklar v. Beth Israel Deaconess Medical Center, 59 Mass. App. Ct. 550, 557 (2003).

The Corporate Defendants cannot bring a claim for malicious prosecution before the underlying case has been decided in their favor, because until the case is decided, it cannot be known whether the Corporate Defendants prevailed. See id.; see also Cole v. Pulley, 18 Mass. App. Ct. 950 (1984) (a complaint for malicious prosecution must not be brought before the prior proceeding has been determined, because until then it cannot be known whether it terminated successfully for the defendant). The Corporate Defendants do not allege that the proceedings have been legally and finally terminated in their favor. Nor can they do so. Accordingly, the Corporate Defendants' claim for malicious prosecution fails on the face of the Counterclaim.[3]

---

[3]Further, to establish malice, the Corporate Defendants must come forward with some evidence that would permit a fact finder to conclude that Westfield (1) knew there was no probable cause for this action, and (2) acted with an improper motive. Sklar v. Beth Israel Deconess Medical Center, 59 Mass. App. Ct. 550, 557 (2003). The Court has already found, based on evidence provided in connection with the Special Motion to Dismiss, that Westfield made a showing that "the Defendants' 'exercise of [their] right to petition was devoid of any reasonable factual support or any arguable basis in law." That finding, coupled with the Corporate Defendants'

## III.    THE CORPORATE DEFENDANTS FAIL TO STATE A CLAIM FOR LIBEL OR SLANDER.

"To prevail on a claim for defamation, a plaintiff must establish that the defendant was at fault for publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." <u>White v. Blue Cross and Blue Shield of Massachusetts, Inc.</u>, 442 Mass. 64, 66.  The Corporate Defendants must show that the alleged defamatory statement was "of and concerning" the Corporate Defendants.  <u>See</u> <u>Eyal v. Helen Broadcasting Corp.</u>, 411 Mass. 426, 430 (1991).

The Corporate Defendants factual allegations in this case are incomprehensible and vague.  In general, the Counterclaim may be read to allege that:

- Threats of litigation against the Individual Defendants were reported in the local newspapers.

- The Individual Defendants were characterized by the Plaintiff's agents as persons seeking to, among other things, stop economic development in the city of Westfield by underhanded means.

- The reports to the local press were disparaging toward the Individual Defendants, as well as the Corporate Defendants, and held them up to public ridicule.

- The Plaintiff, its agents and employees, caused information to be given to the local press which was unfounded, and created the innuendo that the Corporate Defendants were somehow complicit in an improper or illegal activity.

- The information given by the Plaintiff, its employees and agents was known to be unsupported and was reasonably certain to be untrue.

- These actions were malicious and motivated by economic ends rather than the truth of the information or ensuing innuendos created by the Plaintiff.

- As a direct result of the Plaintiff's actions, the Corporate Defendants were held up to public ridicule and their reputations damaged.

---

concession that they "contributed to" the Individual Plaintiffs' petitioning activity, <u>see</u> Counterclaim at ¶28, defeat the Corporate Defendants' allegation of no probable cause.

These generalized allegations do not satisfy the Corporate Defendants' pleading requirements. The Corporate Defendants do not allege what statements were made; to whom such statements were made; whether such statements were, in fact, false[4]; whether such statements were "of or concerning" the Corporate Defendants; and whether such statements, if made, were capable of damaging the Corporate Defendants' reputation in the community. Indeed, notably absent from the Counterclaim is any allegation about the type or scope of the alleged defamatory comments. As the First Circuit has recognized, a defendant is entitled to knowledge of the precise language challenged as defamatory. See Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 728 n. 6 (1st Cir. 1992).[5] The Corporate Defendants' failure to meet their pleading requirement is fatal to their defamation claim.

Moreover, the untimeliness of the counterclaim militates in favor of dismissal. Discovery closed on February 28, 2006. The final pre-trial conference is scheduled on March 20, 2006. This is not a situation in which Westfield could learn the scope of the alleged defamatory comments through discovery. By filing an extremely belated and vague counterclaim, the Corporate Defendants have placed Westfield in the untenable position of having to defend such a claim at trial without being able to make sense of the nature of the claim from the face of the

---

[4] The Corporate Defendants allege only that the information was "reasonably certain to be untrue."

[5] In 2003, the First Circuit appears to have rejected the applicability in federal actions of the heightened pleading required for defamation claims under Massachusetts law. See Andersen v. Diorio, 349 F.3d 8 (1st Cir. 2003). The United States District Court for the District of Massachusetts, recognizing the effect of Andersen, found that Phantom Touring still stands for the proposition that, under notice pleading requirements, if a complaint specifically identifies the scope of the comments at issue in a case involving defamation claims, the proper route for adding additional comments is a motion to amend. See Bleau v. Greater Lynn Mental Health & Retardation Assn., 371 F.Supp.2d 1, 2 (D. Mass. 2005). Andersen, therefore, does not negate the requirement that a plaintiff plead at least the scope of the comments at issue.

- 11 -

complaint, and without any discovery as to the scope of the alleged defamation. The

Counterclaim should be dismissed for this reason as well.

## Conclusion

For the foregoing reasons, Westfield East Main Street LLC requests that the Court allow

its Motion to Dismiss and dismiss Defendants' Counterclaims.

WESTFIELD EAST MAIN STREET LLC

By its attorneys,

/s/ David A. Brown
David A. Brown, BBO# 556161
Pamela A. Zorn, BBO# 640800
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000

00105243.DOC / 4